01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
07                                   AT SEATTLE

08   NANCY L. SCHEIBEL,                        )
                                               )   CASE NO. C10-948-JLR-MAT
09              Plaintiff,                      )
                                               )
10        v.                                    )   REPORT AND RECOMMENDATION
                                               )
11   MICHAEL J. ASTRUE, Commissioner of        )
     Social Security,                          )
12                                             )
                Defendant.                      )
13   _____   )

14          Plaintiff Nancy L. Scheibel appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her application for Disability

16   Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after

17   a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the

18   Court recommends that the Commissioner's decision be REVERSED and REMANDED.

19                          I.  FACTS AND PROCEDURAL HISTORY

20          Plaintiff was born in 1957 and was 49 years old at the time of the hearing before the

21   ALJ.  (Administrative Record ("AR") 83.)  She has at least a high school education.  (AR

22   25.)  Her past work experience includes employment as a bank teller, cashier, phone solicitor,

REPORT AND RECOMMENDATION
PAGE - 1

01   green house worker, and dry cleaning counter person.  *Id*.  Plaintiff asserts that she is disabled

02   due to physical and mental problems, including lower back pain, diabetes mellitus with

03   neuropathy, obesity, hypertension, sleep apnea, right renal artery disease, depression, and

04   attention deficit disorder ("ADD").  (Dkt. 13 at 2.)  She asserts an onset date of January 1,

05   2004.  (AR 83-85.)

06       Plaintiff was previously found disabled for a closed period of time between June 8,

07   1995, through September 29, 1999.  (AR 60-63.)  Additionally, plaintiff was previously

08   found disabled as of her 50th birthday in a separate application filed with the Social Security

09   Administration.  (AR 7.)  The specific issue here is whether plaintiff was disabled at any time

10   between January 1, 2004, and the date she attained age 50.

11       The Commissioner denied plaintiff's claim initially and on reconsideration.  (AR 66,

12   70.)  The Plaintiff requested a hearing, which took place on July 11, 2007.  (AR 72, 928-49.)

13   The plaintiff appeared and testified at the hearing in Bellingham, Washington.  (AR 16,

14   928-49.)  On October 11, 2007, the ALJ issued a decision finding the plaintiff not disabled.

15   (AR at 16-26.)

16       Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals

17   Council, making the ALJ's ruling the "final decision" of the Commissioner as that term is

18   defined by 42 U.S.C. § 405(g).  (AR 6-10.)  On June 9, 2010, plaintiff timely filed the present

19   action challenging the Commissioner's decision.  (Dkt. No. 1.)

20                              II.  JURISDICTION

21       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

22   405(g) and 1383(c)(3).

01                             III.   STANDARD OF REVIEW

02          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

03 social security benefits when the ALJ's findings are based on legal error or not supported by

04 substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

05 Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

06 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

07 *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

08 Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

09 testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d

10 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it

11 may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

12 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).   When the evidence is susceptible to

13 more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

14 *Id.*

15          The Court may direct an award of benefits where "the record has been fully developed

16 and further administrative proceedings would serve no useful purpose."   *McCartey v.*

17 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)(citing *Smolen v. Chater*, 80 F.3d 1273, 1292

18 (9th Cir. 1996)).   The Court may find that this occurs when:

19            (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
           claimant's evidence; (2) there are no outstanding issues that must be resolved

20            before a determination of disability can be made; and (3) it is clear from the record
           that the ALJ would be required to find the claimant disabled if he considered the

21            claimant's evidence.

22 *Id.* at 1076-77.

01                                    IV.   DISCUSSION

02          As the claimant, Ms. Scheibel bears the burden of proving that she is disabled within the

03   meaning of the Act.   *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   The Act defines

04   disability as the "inability to engage in any substantial gainful activity" due to a physical or

05   mental impairment which has lasted, or is expected to last, for a continuous period of not less

06   than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   A claimant is disabled

07   under the Act only if her impairments are of such severity that she is unable to do her previous

08   work, and cannot, considering her age, education, and work experience, engage in any other

09   substantial gainful activity existing in the national economy.   42 U.S.C. § 423(d)(2)(A); *see*

10   *also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

11          The Commissioner follows a five-step sequential evaluation process for determining

12   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

13   must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

14   not engaged in substantial gainful activity since January 1, 2004, the alleged onset date.   (AR

15   18.)   At step two, it must be determined whether the claimant suffers from a severe

16   impairment.   The ALJ found plaintiff had the following severe impairments: obesity, renal

17   artery with a stent, hypertension, diabetic neuropathy, and amputated toe.   (AR 18-21.)   Step

18   three asks whether the claimant's impairments meet or equal a listed impairment.   The ALJ

19   found plaintiff did not have an impairment or combination of impairments that met or equaled a

20   listed impairment.   (AR 22.)   If the claimant's impairments do not meet or equal a listing, the

21   Commissioner must assess residual functional capacity ("RFC") and determine at step four

22   whether the claimant has demonstrated an inability to perform past relevant work.   The ALJ

01  found plaintiff had the RFC to perform the full range of sedentary work.  *Id*.  However, the

02  ALJ found plaintiff was unable to perform any of her past relevant work.  (AR 25.)  If the

03  claimant is able to perform her past relevant work, she is not disabled; if the opposite is true,

04  then the burden shifts to the Commissioner at step five to show that the claimant can perform

05  other work that exists in significant numbers in the national economy, taking into consideration

06  the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

07  416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999).  The ALJ found,

08  based on the plaintiff's age, education, work experience, and RFC, that there are jobs that exist

09  in significant numbers in the national economy that plaintiff could perform.  (AR 26.)  The

10  ALJ concluded that plaintiff had not been under a disability from January 1, 2004, through the

11  date of the decision.  *Id*.

12      Plaintiff contends that the ALJ erred by (1) improperly evaluating the severity of her

13  back and mental impairments at step two; (2) improperly evaluating her RFC; (3) improperly

14  evaluating her obesity impairment at step three; and (4) improperly evaluated her credibility

15  regarding her obesity related limitations.  (Dkt. 13.)  She requests remand for an award of

16  benefits, or, alternatively, for further administrative proceedings.  *Id*. at 24.  The

17  Commissioner argues that the ALJ's decision is supported by substantial evidence and should

18  be affirmed.  (Dkt. 14.)  For the reasons described below, the Court agrees with the plaintiff.

19      A.   <u>Step Two Severity Analysis</u>

20      At step two, a claimant must make a threshold showing that her medically determinable

21  impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

22  *Yuckert*, 482 U.S. 137, 145, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§

01 404.1520(c), 416.920(c).   "Basic work activities" refers to "the abilities and aptitudes

02 necessary to do most jobs," including walking, standing, sitting, lifting, pushing, pulling,

03 reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and

04 remembering simple instructions, using judgment, and dealing with changes in a routine work

05 setting.   20 C.F.R. §§ 404.1521(b), 416.921(b).   "An impairment or combination of

06 impairments can be found 'not severe' only if the evidence establishes a slight abnormality that

07 has 'no more than a minimal effect on an individual's ability to work.'"   *Smolen*, 80 F.3d at

08 1290 (quoting Social Security Ruling ("SSR") 85-28).   "[T]he step two inquiry is a de minimis

09 screening device to dispose of groundless claims."   *Id*. (citing *Bowen*, 482 U.S. at 153-54).

10 An ALJ is also required to consider the "combined effect" of an individual's impairments in

11 considering severity.   *Id*.

12 1.   <u>Severity of Back Impairment</u>

13 As indicated above, the ALJ found plaintiff had the following severe impairments:

14 obesity, renal artery with a stent, hypertension, diabetic neuropathy, and amputated toe.   (AR

15 18-21.)   However, the ALJ failed to address plaintiff's back impairment at step two.   The ALJ

16 noted at step four that plaintiff "testified that she was unable to work due to pain in her lower

17 back," but made no further mention of it in his findings.   (AR 23.)   The plaintiff argues that

18 the ALJ's failure to find her back impairment severe at step two was legal error.   (Dkt. 13 at

19 6-12.)   She contends that the ALJ improperly ignored her testimony as well as the medical

20 evidence of her back impairment at step two and throughout the remainder of his disability

21 evaluation.   *Id*.   The Court agrees that the ALJ erred in his treatment of plaintiff's back

22 impairment.

01          As set forth in the Commissioner's own regulations, a severe impairment or

02   combination of impairments exists when the evidence establishes "more than a minimal effect

03   on an individual's ability to work."   SSR 85-28 (citing 20 C.F.R. §§ 404.1520, 404.1521,

04   416.920(c), 416.921); *see also* SSR 96-3p.   The prevailing view is that only a "slight

05   abnormality" or combination of slight abnormalities that minimally affect an individual's

06   ability to work can be considered non-severe.   *See, e.g., Smolen*, 80 F.3d at 1290.   Thus, the

07   regulatory severity test is quite lenient, and is generally employed only as an administrative

08   convenience designed to screen out totally groundless claims.   *Id*.   An overly stringent

09   interpretation of the severity requirement violates the statutory standard for disability.   *Id*.

10          Plaintiff alleges that in 2004 she had a recurrence of long-standing back problems (low

11   back pain) that interfered with her ability to work.   (Dkt.   13 at 4.)   During the relevant time

12   period, plaintiff was diagnosed with chronic low back pain, disc herniation, spinal stenosis,

13   lumbar spondylosis, facet joint disease, and lumbar intervertebral degenerative disc disease.

14   (AR 321, 475, 538-94, 601-03, 654, 691, 875-76, 878.)   These diagnoses were based on

15   objective medical evidence, including physical examinations and radiological studies.   *Id*.   In

16   October 2004, plaintiff received a course of physical therapy for her lower back pain.   (AR

17   878-79.)   Additionally, in 2006, plaintiff underwent four epidural steroid injections as well as

18   thermal radiofrequency ablation of her right L4-5 and L5-S1 facet joints.   (AR 550, 555-56,

19   567, 574, 578-79.)   There is also evidence that this condition negatively impacted her ability to

20   perform basic work related activities.   (AR 178-203, 601, 654, 878-79, 407.)   Certainly, this

21   evidence suggests that plaintiff's low back pain might have met the "de minimis" severity

22   standard of step two.   However, the ALJ did not analyze this evidence.

REPORT AND RECOMMENDATION
PAGE - 7

01      The Commissioner argues that any error in failing to address plaintiff's back

02  impairment at step two was harmless "because the ALJ specifically referenced physical RFC

03  findings from state agency physician, Robert Hoskins, M.D., . . . [who] found, based on all of

04  Plaintiff's impairments, including a back impairment, that plaintiff was limited to sedentary

05  work." (Dkt. 14 at 4.) The Commissioner further contends that "Plaintiff has not

06  demonstrated how the severity finding of an impairment was harmful." *Id.* The Court

07  disagrees with the Commissioner.

08      The Ninth Circuit has concluded that any error at step two is harmless when an ALJ

09  accounts for impairment-related limitations in subsequent steps of the disability evaluation.

10  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, however, there is no indication

11  that the ALJ properly considered the impact of plaintiff's back impairment at later steps.

12  Although the ALJ relied on Dr. Hoskins' Physical Residual Functional Capacity Assessment,

13  Dr. Hoskins's assessment dated May 7, 2005, predates nearly all of plaintiff's medical records

14  related to her back impairment, including plaintiff's treatment at Mt. Baker Spine Center,

15  radiological studies, lumbar steroid injections, and lumbar radiofrequency neurotomy.

16  Furthermore, although Dr. Hoskins referenced plaintiff's back impairment, he did not include

17  any back related limitations in his RFC assessment because there were no diagnoses or

18  objective findings at the time of his assessment. (AR 293-94.) As Dr. Hoskins's RFC

19  assessment states, the "[medical evidence of record] indicates a history of [low back pain], but

20  no objective findings in [medical evidence of record] since [alleged onset date], and, no recent

21  diagnosis with regards to [low back pain]." *See id.* Moreover, the ALJ made no effort to

22  address the subsequent medical evidence in his decision, thus it is unlikely the ALJ considered

01 plaintiff's back impairment alone or in combination with her other impairments at subsequent

02 steps in the evaluation process.

03      Even if the evidence does not establish that plaintiff's diagnosed back impairments

04 cause more than a "slight abnormality," the ALJ erred by failing to address them at step two and

05 by failing to consider their effects in combination with other severe impairments throughout the

06 sequential evaluation process.   Accordingly, the Court finds the ALJ's error in failing to

07 address plaintiff's back impairment was not harmless, and this case must be remanded to the

08 Commissioner to consider plaintiff's back impairment.

09                    2.      Severity of Mental Impairments

10      Plaintiff also assigns error to the ALJ's determination that her mental impairments were

11 nonsevere.  (Dkt. 13 at 19-24.)  Plaintiff avers that the ALJ relied on outdated assessments

12 and that the medical evidence establishes that her depression and ADD caused at least moderate

13 limitations and, therefore, were severe.   *Id*.   She argues that the ALJ failed to provide specific

14 and legitimate reasons for disregarding the opinions of nonexamining psychologist Thomas

15 Clifford, Ph.D., examining psychiatrist David Sandvik, M.D., treating primary care physician

16 Bruce Pederson, M.D., and treating psychologist Jeffrey Steger, Ph.D.  *Id*. at 19-23.  The

17 Commissioner disagrees and responds that the ALJ properly assessed the severity of plaintiff's

18 mental impairments and gave sufficient reasons for rejecting the opinion of Dr. Sandvik.  (Dkt.

19 14 at 3-5.)

20      In determining whether a claimant has a severe impairment, the ALJ must evaluate the

21 medical evidence and explain the weight given to the opinions of accepted medical sources in

22 the record.   The regulations distinguish among the opinions of three types of accepted medical

01  sources:   (1) sources who have treated the plaintiff; (2) sources who have examined the

02  plaintiff; and (3) sources who have neither examined nor treated the plaintiff, but express their

03  opinion based upon a review of the plaintiff's medical records.   *See* 20 C.F.R. §§ 404.1527,

04  416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

05          In general, more weight should be given to the opinion of a treating physician than to a

06  non-treating physician, and more weight to the opinion of an examining physician than to a

07  non-examining physician.   *Id.*   Where not contradicted by another physician, a treating or

08  examining physician's opinion may be rejected only for "'clear and convincing'" reasons.   *Id.*

09  (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).   Where contradicted, a

10  treating or examining physician's opinion may not be rejected without "'specific and legitimate

11  reasons' supported by substantial evidence in the record for so doing."   *Id.* at 830-31 (quoting

12  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

13          The ALJ may reject physicians' opinions "by setting out a detailed and thorough

14  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15  making findings."   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

16  881 F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

17  interpretations and explain why they, rather than the doctors', are correct."   *Id.*   (citing

18  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).   "The opinion of a nonexamining

19  physician cannot by itself constitute substantial evidence that justifies the rejection of the

20  opinion of either an examining physician or a treating physician."   *Id.* at 831 (citing *Pitzer v.*

21  *Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th ir.

22  1984)).

01      In considering the plaintiff's mental impairments at step two, the ALJ found as follows:

02      The [plaintiff's] mental impairments have not been shown to be severe impairments. Dysthymia was listed as a diagnosis in an intake assessment conducted by Jana McGlinn, MA, in November 1998, although her GAF was at 65. In another assessment performed five years later in May 2003, diagnoses were listed of attention deficit hyperactivity disorder (ADHD) by history, a depressive disorder by history, and alcohol and cannabis use that had ended 11 years earlier. However, at that time she was going to college as well as working 34 hours a week, which led to the conclusion that there was "little impairment in any life domains."

According to yet another intake assessment that is dated January 4, 2005, the diagnoses were a major depressive disorder that was mild due to the use of medication. Her ADHD was now described as "Not otherwise specified" as the claimant had been off medication for this impairment for the preceding two years.

An extensive evaluation was performed by David Sandvik, M.D., in April 2005. This doctor declared that the evaluation process was ". . . greatly encumbered by her hostility and lack of cooperation." She arrived late at the appointment; she answered questions in a sarcastic manner, if she chose to answer; she refused to lower her voice. Her attitude does not enhance her credibility; a bad attitude is not an impairment.

Moreover, she was fully oriented with the ability to interpret proverbs, similarities, and differences normally. According to Dr. Sandvik, her answers, in terms of answers that she gave, were reality based. There was no evidence of tangential or circumstantial thought processes. She was able to repeat digits backward up to 4 and to subtract serial 7's quickly and accurately. Dr. Sandvik listed diagnoses of probable dysthymia, probable impulse control disorder NOS, and rule out paranoid personality disorder. While he indicated some equivocal limitations, he noted that the [plaintiff's] failure to cooperate fully in the examination made it difficult to assess her. Impeding accurate testing of limitations in evaluations militates strongly against credibility. Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002)(citing Rautio v. Bowen, 862 F.2d 176, 179-80 (8th Cir. 1988)).

As noted, the [plaintiff] reported that she was working as an oversight person for children for 5 hours a week and had done so for at least 4 years. With this information, as well as the host of normal findings noted in the medical record, the [plaintiff] has failed to establish any mental impairment as a severe impairment.

The [plaintiff's] medically determinable mental impairments of dysthymia, impulse control disorder, and personality disorder NOS, considered singly and in combination, do not cause more than minimal limitations in the [plaintiff's] ability to perform basic mental work activities and are therefore nonsevere. In making

this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living.  In this area, the [plaintiff] has mild limitation.  The next functional area is social functioning.  In this area, the [plaintiff] has mild limitation.  The third functional area is concentration, persistence or pace.  In this area, the [plaintiff] has mild limitation.  The fourth functional area is episodes of decompensation.  In this area, the [plaintiff] has experienced no episodes of decompensation.  In assessing the "B" criteria, I find no support for the conclusion by the DDS psychologists that the [plaintiff] has more than mild limitations in social functioning.

These findings concerning the "B" criteria are based on careful study of all of the evidence.  Additionally, these findings have their foundation in the [plaintiff's] employment for an hour or two a day for several years.  In engaging in watching children because she enjoys being around them, the [plaintiff] has shown no impediment to work activity in any of the four functional areas.  Any personality issues are under her volitional control.  There is no indication that the attitudinal issues raised at the examination of Dr. Sandvik are pathological.  I note also the GAF of 68 at Exhibit B8F10, and the annotation "little impairment," as well as the GAF of 60 at Exhibit B8F4.

Because the [plaintiff's] medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they are nonsevere.

(AR 20-21.)

In finding the plaintiff had no severe mental impairments, the ALJ erred in his evaluation of the medical evidence.  On May 6, 2005, state agency psychologist Dr. Clifford diagnosed plaintiff with dysthymia and personality disorder.  (AR 274-88.)  He opined that the plaintiff had *moderate* difficulties in maintaining social functioning, and thus had a severe impairment.  (AR 288.)  The ALJ rejected Dr. Clifford's opinion in one sentence, stating, "I find no support for the conclusion by the DDS psychologist that the [plaintiff] has more than mild limitations in social functioning."  (AR 21.)  Rather, the ALJ based his findings on his

REPORT AND RECOMMENDATION
PAGE - 12

01  own "careful study of all of the evidence," and on the plaintiff's employment as an elementary

02  school playground monitor for an hour a day for several years.  *Id*.  As the plaintiff argues,

03  these are not legally sufficient reasons for rejecting Dr. Clifford's opinion.

04         The ALJ is not bound by findings made by the state agency psychologist, however, he

05  may not ignore the opinion and must explain the weight given to the opinion in his decision.

06  *See* SSR 96-6; 20 C.F.R. §§ 404.1527(f), 416.927(f).   The ALJ found Dr. Clifford's opinion

07  was inconsistent with the medical evidence, but did not identify the particular evidence he was

08  referring.   "[C]onclusory reasons will not justify an ALJ's rejection of medical opinion."

09  *Regennitter v. Soc. Sec. Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999).   Furthermore, the fact

10  that plaintiff worked one hour a day does not negate Dr. Clifford's opinion.   *Cf. Vertigan v.*

11  *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)("A patient may do [physical] activities despite pain

12  for therapeutic reasons, but that does not mean she could concentrate on work despite the pain

13  or could engage in similar activity for a longer period given the pain involved.")   School

14  records show plaintiff has been on medical leave since March 2006.  (AR 203.)   In addition,

15  school records indicate that plaintiff received multiple unsatisfactory performance appraisals

16  due in part to her inattention, lack of focus, and inability to relate effectively with students,

17  teachers, parents, staff, and supervisors.  (AR 207-13, 229, 239-42, 696.)   Thus, plaintiff's

18  work one hour a day does not establish that her medically determinable impairments do not

19  significantly limit her ability to perform basic work activities.   The ALJ cannot substitute his

20  own opinion of for that of a medical expert by disregarding or manipulating the evidence of

21  record.   *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

22         The ALJ also failed to provide legally sufficient reasons for rejecting the opinion of

REPORT AND RECOMMENDATION
PAGE - 13

01 examining psychiatrist Dr. Sandvik.   On April 12, 2005, Dr. Sandvik performed a psychiatric

02 evaluation of the plaintiff.   (AR 386-89.)   Dr. Sandvik reported, "the evaluation process was

03 greatly encumbered by [plaintiff's] hostility and lack of cooperation."   (AR 389.)

04 Nevertheless, Dr. Sandvik diagnosed plaintiff with probable dysthymia, probable impulse

05 control disorder not otherwise specified ("NOS"), with angry features, and rule-out paranoid

06 personality disorder.   (AR 388.)   He estimated plaintiff's Global Assessment of Functioning[1]

07 ("GAF") score at 50, indicating serious symptoms.   He arrived at the impression that plaintiff

08 had at least moderate to severe symptoms with few friends, and multiple interpersonal conflicts,

09 as well as serious impairments in social and other functioning.   (AR 388.)

10        The ALJ rejected Dr. Sandvik's opinion, finding that plaintiff's "bad attitude;" her

11 ability to interpret proverbs, similarities, and differences normally; and her ability to repeat

12 digits backward up to 4 and subtract serial 7's quickly and accurately, showed that she did not

13 have a severe mental impairment.   (AR 20-21.)   The ALJ's reason is neither clear and

14 convincing nor specific and legitimate.   Rather, the ALJ merely reinterpreted the results of Dr.

15 Sandvik's own mental-status examination and substituted his own lay opinion for that of Dr.

16 Sandvik.   Furthermore, the ALJ appears to have required that plaintiff provide evidence of a

17 disabling mental impairments at step two, when the law requires only that plaintiff show mental

18 impairments that have more than a "minimal" impact on her functioning.

19        Without explanation, the ALJ also stated, "I note also the GAF of 68 and the annotation

20 'little impairment,' as well as the GAF of 60."   (AR 21, internal citations omitted.)   The ALJ

21

22        [1]The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's
judgment of the individual's overall level of functioning."   American Psychiatric Ass'n,
Diagnostic and Statistical Manual of Mental Disorders 32 (Text. Rev., 4th ed. 2000).

REPORT AND RECOMMENDATION
PAGE - 14

01  refers to the May 2003 and January 2005 intake assessments from plaintiff's mental health

02  counselors at Whatcom Counseling & Psychiatric Clinic.   (AR 355-65.)   The ALJ's reference

03  to these intake assessments is not only ambiguous but misstates the evidence.   The May 2003

04  intake assessment recorded a GAF score of 68, and noted "little impairment in life domains."

05  (AR 361.)   However, this assessment predates plaintiff's alleged onset date of January 1, 2004,

06  and does not refute plaintiff's allegation of escalating mental impairments of depression and

07  lack of focus due to ADD.   (AR 132, 136-38, 943.)   Furthermore, the January 2005 intake

08  assessment recorded a GAF score of 60, which indicates "moderate symptoms," such as a flat

09  affect, occasional panic attacks, or "moderate difficulty in social [or] occupational . . .

10  functioning."   American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental

11  Disorders 32 (Text. Rev., 4th ed. 2000).   The assessment noted that plaintiff's "depression

12  caused significant impairment which is mediated by medication," and that plaintiff had

13  discontinued stimulant medication for ADHD in 2003 due to increased blood pressure, and had

14  "moderate symptoms & impairments."   (AR 355.)   By October 2005, however, plaintiff was

15  again taking medication for ADD/ADHD which continued until at least January 2007.   (AR

16  641, 644, 653, 676-77, 697-98, 750.)   Thus, contrary to the ALJ's inference, the 2005 intake

17  assessment is not inconsistent with Dr. Clifford's or Dr. Sandvik's opinions.

18       In addition to the above doctors, plaintiff's treating doctors, Dr. Pederson and Dr.

19  Steger, diagnosed plaintiff with similar impairments and found similar functional limitations.

20  For example, Dr. Pederson's records show he diagnosed her with depression and ADD and

21  treated her with medications.   (AR 657, 668, 696-97.)   Dr. Steger conducted psychological

22  testing and diagnosed plaintiff with chronic depression and poorly controlled ADHD, chronic

01  pain, past substance abuse, and compulsive eating disorder.   (AR 506-21.)   However, the ALJ

02  did not discuss or reject Dr. Pederson's and Dr. Steger's medical evidence at step two.   The

03  Court notes that the ALJ rejected interrogatory forms prepared by Dr. Pederson and Dr. Steger

04  at step four, but never addressed their medical records or diagnoses.   (AR 24-25.)   This

05  un-rejected medical evidence establishes mental disorders that cause more than a minimal

06  effect on plaintiff's functioning, and should have been evaluated at step two.   Even if found to

07  be nonsevere, these medically determinable impairments should have been considered in

08  combination with other severe impairments by the ALJ throughout the sequential evaluation.

09         B.       Residual Functional Capacity Assessment

10         "RFC is an assessment of an individual's ability to do sustained work-related physical

11  and mental activities in a work setting on a regular and continuing basis.  A 'regular and

12  continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

13  SSR 96-8p at 1.   The RFC assessment must be based on all of the relevant evidence in the case

14  record, such as:   medical history; the effects of treatment, including limitations or restrictions

15  imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily

16  activities; lay activities; recorded observations; medical source statements; effects of

17  symptoms, including pain, that are reasonably attributed to a medically determinable

18  impairment; evidence from work attempts; need for structured living environment; and work

19  evaluations.   SSR 96.8p.

20         Here, the RFC at issue states that plaintiff is able to perform the full range of sedentary

21  work.   (AR 22.)   Because the ALJ failed to properly consider the plaintiff's back impairment

22  and mental impairments at step two of the disability sequential evaluation process, he failed to

01   assess how the combination of the plaintiff's physical and non-exertional impairments

02   impacted her residual functional capacity.  *See Smolen*, 80 F.3d at 1290.  Accordingly, on

03   remand, the ALJ will take into account the plaintiff's physical impairments and her

04   non-exertional limitations and reassess her RFC.

05          C.       Step Three Listing of Impairments

06          Step three of the sequential evaluation process requires the ALJ to determine whether

07   plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to

08   20 C.F.R. Part 404, Subpart P.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The listings describe

09   specific impairments in each of the body's major systems that are considered "severe enough to

10   prevent a person from doing most gainful activity."  20 C.F.R. §§ 404.1525, 416.925(a).

11   Severe impairments must be "permanent or expected to result in death," or must last or be

12   expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1525(a),

13   416.925(a).  The ALJ's analysis at step three must rely only on medical evidence and not rely

14   on age, education or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bates v.*

15   *Barnhart*, 222 F.Supp.2d 1252, 1258 (D. Kan. 2002).  To be found disabled at step three,

16   plaintiff must prove that she meets or equals each of the characteristics of a listed impairment.

17   20 C.F.R. §§ 404.1525(a), 416.925(a); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

18   2005).  A claimant who meets or equals a listing is presumed disabled at step three without

19   further inquiry.  20 C.F.R. § 416.920(a)(4)(iii).

20          Plaintiff argues that the ALJ erred at step three by failing to consider whether her

21   obesity, in combination with her other impairments, met or medically equaled a listed

22   impairment.  (Dkt. 13 at 12-15.)  With respect to plaintiff's obesity, the ALJ simply stated,

REPORT AND RECOMMENDATION
PAGE - 17

01    "Obesity is not a listed impairment."   (AR 22.)

02           While obesity has been eliminated as a listing, the Commissioner must determine

03    whether plaintiff's obesity is medically equivalent to one of the other listed impairments.   *See*

04    SSR 02-1p.   In addition, the Commissioner must determine whether plaintiff's obesity, in

05    combination with her other impairments, meets or equals a listed impairment.   *See id*.   The

06    current prefaces to the musculoskeletal, respiratory and cardiovascular body system listings

07    provide guidance about the potential side effects obesity has in causing or contributing to

08    impairments in those body systems.   *See, e.g*., 20 C.F.R. Part 404, Subpt. P, App. 1, Section

09    1.00Q.   In addition, according to the Commissioner, "obesity may cause or contribute to

10    mental impairments such as depression."   SSR 02-1p.

11           In this case, it is not clear that the ALJ considered whether plaintiff's obesity, alone or in

12    combination with her other impairments, met or medically equaled a listing.   Rather, the ALJ's

13    statement that "[o]besity is not a listed impairment," indicates that he did not consider the issue

14    of equivalency.   "The record must reflect that an ALJ has 'actually considered equivalence'

15    and simply making a finding that plaintiff's impairments do not meet or equal a listing is

16    insufficient."   *James v. Apfel*, 174 F. Supp. 2d 1125, 1130 (W.D. Wash. 2001)(quoting *Marcia*

17    *v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).   Accordingly, remand is warranted so that the

18    ALJ can reevaluate the listings in light of the Court's decision.

19           D.    Credibility

20           Plaintiff argues that the ALJ committed additional errors by rejecting her testimony

21    regarding her obesity limitations and by failing to include such limitations in his RFC

22    assessment.   (Dkt. 16 at 16-18; Dkt. 15 at 4-8.)   Specifically, plaintiff contends that the ALJ

01 erroneously disregarded her testimony of obesity related limitations which would prevent her

02 from performing a full range of sedentary work, including severe daily fatigue, shortness of

03 breath, difficulties with mobility and increased back pain.   (Dkt. 13 at 14; Dkt. 15 at 5.)   The

04 Court agrees that the ALJ's reasons for doubting plaintiff's testimony regarding her obesity

05 related limitations are not "specific and legitimate reasons supported by substantial evidence in

06 the record."   *Lester*, 81 F.3d at 830.

07      Credibility determinations are particularly within the province of the ALJ.   *Andrews*,

08 53 F.3d at 1043.   Nevertheless, when an ALJ discredits a claimant's testimony, he must

09 articulate specific and adequate reasons for doing so.   *Greger v. Barnhart*, 464 F.3d 968, 972

10 (9th Cir. 2006).   The determination of whether to accept a claimant's subjective symptom

11 testimony requires a two-step analysis.   20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at

12 1281; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *2-3.   First, the ALJ must

13 determine whether there is a medically determinable impairment that reasonably could be

14 expected to cause the claimant's symptoms.   20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*,

15 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186, *2-3.   Once a claimant produces medical

16 evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to

17 the severity of symptoms solely because they are unsupported by objective medical evidence.

18 *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)(en banc).   Absent affirmative evidence

19 that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

20 rejecting the claimant's testimony.   *Smolen*, 80 F.3d at 1284.

21      Here, the ALJ rejected plaintiff's testimony, in part, because she had failed to lose

22 weight despite her doctor's recommendations.   (AR 24.)   The ALJ wrote:

REPORT AND RECOMMENDATION
PAGE - 19

01       The [plaintiff's] obesity and its resulting adverse effect on other impairments is the result of her own inaction in following recommendations for diet and exercise.

02  She appears to have aimed at having gastric bypass surgery, rather than attending to the recommendations that she has received.   Thus she continued to go to fast food

03  restaurants even though she had been told by Eric Frankenfield, M.D., to consider ". . . those places poisonous to her."   With her morbid obesity and deconditioning

04  has come shortness of breath.   The [plaintiff's] disinterest in remedying her weight despite its adverse effect suggests that the [plaintiff] is disinterested in returning to

05  full time work activity.   Her physician obviously considers her obesity to be to some extent under her own control.   Failure to lose weight as recommended may

06  [sic] taken into account in assessing credibility.   And medical opinion that exercise and weight loss can alleviate poor medical conditioning is a significant factor in

07  assessing capacity to work.

08  (AR 24, internal citations omitted.)

09       A claimant's failure to follow treatment is not a proper reason to reject a claimant's

10  testimony regarding her obesity.   *See Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir.

11  2007)(*citing* SSR 02-1p; 20 C.F.R. §§ 404.1530, 416.930).   As the Ninth Circuit instructs:

12       Before failure to follow treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or because of

13  obesity and another impairment(s).   Our regulations at 20 CFR 404.1530 and 416.930 provide that, in order to get benefits, an individual must follow treatment

14  prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed

15  treatment.   We will rarely use "failure to follow treatment" for obesity to deny or cease benefits.

16      . . .

17  When a treating source has prescribed treatment for obesity, the treatment must clearly be expected to improve the impairment to the extent that the person will not be disabled. . . . The goals of treatment for obesity are generally modest, and

18  treatment is often ineffective.   Therefore, we will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be

19  successful.

20  *Id*. (quoting SSR 02-1p).

21       In the instant case, the ALJ did not first find that plaintiff is disabled because of obesity

22  or because of obesity and another impairment.   *See id*.   He was therefore not permitted to

REPORT AND RECOMMENDATION
PAGE - 20

01 make failure to follow treatment for obesity an issue in this case.   Furthermore, nothing in the

02 record establishes that a diet and exercise plan was prescribed to plaintiff or that any treatment

03 would clearly be successful.   Rather, it appears that Dr. Pederson "strongly advised" and

04 "strongly encouraged regular exercise and strict dieting and weight loss."  (AR 344-46)  "A

05 treating source's statement that an individual 'should' lose weight or has 'been advised' to get

06 more exercise is not prescribed treatment."   SSR 02-1p.   Moreover, there is no evidence that

07 plaintiff willfully disregarded her doctor's advice to lose weight.   The record indicates that

08 plaintiff had been going to support groups and informational meetings, and had tried numerous

09 weight loss programs, including Jenny Craig, Weightwatchers, and Overeaters Anonymous

10 without benefit.   (AR 329, 344-46, 353-55, 407-09.)   Plaintiff also expressed interest in

11 pursuing bariatric surgery.   (AR 344.)   Plaintiff's failure to lose weight does not constitute a

12 refusal to undertake the recommended treatment.   *See McCall v. Bowen*, 846 F.2d 1317, 1319

13 (11th Cir. 1988).   Based on the record, the ALJ's decision to discredit plaintiff's testimony

14 because of her failure to lose weight was legal error and requires reversal.

15                                          V.   CONCLUSION

16          For the foregoing reasons, the Court recommends that this case be REVERSED and

17 REMANDED to the Commissioner for further proceedings consistent with this Court's

18 opinion.   A proposed order accompanies this Report and Recommendation.

19          DATED this 4th day of January, 2011.

20

21                                                        Mary Alice Theiler
                                                         United States Magistrate Judge

22

REPORT AND RECOMMENDATION
PAGE - 21